UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

ANTHOINE DESHAW ODOM,

             Plaintiff,                Case No. 2:12-cv-374

v.                                    Honorable Robert Holmes Bell

DANIEL HINES, et al.,

             Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Sheri, McKeon, Gilbert, Govern, Lindberg, Atkins, Curley, Wealton, Coello, Rule, Petaja, Dewar, Bush, Pesola, Lapoint, Tribley, Place, Perrish, Miller, Haischer, Gill, Yankavitch, Snider, LaChance, Comfort, Zachy, Mackey, Reckor, Frackin, Perry (the short one), Mayo, Dr. Fracki, Sackett, Berry, Ross, Lake, McPhearson, Betts, United States District

Judge R. Allan Edgar, Morgan, Lau, Antalia, Perry (the tall one), Latundresse, Amlie, CMS [Corrections Medical Services], Woelek, Harris, Bursard, Masker, Attorney Peters, Attorney Peleta, Young, Zimbleman, Taja, Ceollo, Napel, Michigan Parole Board Commission, Heyns, Beauchamp, Cummings, Wallace, Alexander, Caron, Nardie, Talieo, Niemeisto, Yunker, James, Vietalla, Havenor, Sibily, Larson, Steal, Chaplain Peters, Mohrman, Burns, Nelson, Eagen, Warchock, Kutichie, Grant, Henshaw, McIntire, Verntenes, and Reddinger. The Court will serve the complaint with regard to Plaintiff's retaliation claims against Defendants Hill, Stecarol, Mills, Joki, Jhondreau, Hutchinson, Minnard, Turner, Himmila, Negalie, Goodreau, Grubb, Hommer, Tehakko, Beasly, Shainer, Kutchie, and Toleftson, as well as his Eighth Amendment claims against Defendants Hutchinson, Minnard, Turner, Himmila, Toleftson, Wellman, Bolton, Hill, and Kutchie.

## Discussion

### I.     Factual allegations

Plaintiff Anthoine Deshaw Odom, a state prisoner currently incarcerated at the Marquette Branch Prison (MBP), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Jeri Ann Sheri, Richard McKeon, Robyn Gilbert, Unknown Govern, Steven W. Lindberg, Tane Atkins, Michael W. Curley, Unknown Stecarol, Audrey Mills, Unknown Joki, Unknown Jhondreau, Unknown Wealton, Unknown Coello, Unknown Rule, Dr. Hutchinson, Terry Minnard, R.N., Inspector Petaja, Assistant Resident Unit Supervisor Dewar, Kitchen Director Bush, Corrections Officer Pesola, Unknown Lapoint, Assistant Deputy Warden Kenneth Tribley, Warden Shane Place, Unknown Perrish, Corrections Officer Miller, Sergeant Haischer, Corrections Officer Gill, Lieutenant Yankavitch, Nurse Snider, Unknown LaChance, Corrections Officer Turner, Physician Assistant Margrette Comfort, Doctor Zachy, Hearing Officer Linda Mackey, Guard

Reckor, Guard Himmila, Guard Negalie, Lieutenant Frackin, Lieutenant Perry (the short one), Guard Mayo, Dr. Fracki, Resident Unit Manager Sackett, Food Director Berry, Mailroom Supervisor Ross, Corrections Officer Lake, Corrections Officer McPhearson, Corrections Officer Goodreau, Corrections Officer Betts, United States District Judge R. Allan Edgar, Unknown Morgan, Unknown Lau, Unknown Antalia, Lieutenant Perry (the tall one), Corrections Officer Latundresse, Classification Director Amlie, CMS [Corrections Medical Services], Corrections Officer Toleftson, Psychiatrist Tonya Woelek, Psychiatrist Harris, Librarian Bursard, Corrections Officer Masker, Dietician Kelly Wellman, Attorney Unknown Peters, Attorney Unknown Peleta, Mathew D. Young, Corrections Officer Unknown Grubb, Corrections Officer Unknown Hommer, Field Officer Jessica Zimbleman, Inspector Taja, Corrections Officer Ceollo, Warden Robert Napel, Michigan Parole Board Commission, MDOC Director Daniel Heyns, Sergeant Unknown Beauchamp, Sergeant Unknown Cummings, Classification Director Jim Wallace, Assistant Deputy Warden Jim Alexander, Grievance Coordinator Glenn Caron, Assistant Resident Unit Supervisor Unknown Nardie, Resident Unit Manager Unknown Talieo, Resident Unit Manager Unknown Niemeisto, Corrections Officer Unknown Bolton, Librarian Aaron Yunker, Sergeant Unknown James, Assistant Resident Unit Supervisor Unknown Vietalla, Corrections Officer Unknown Hill, Sergeant Unknown Havenor, Sergeant Unknown Sibily, Assistant Deputy Warden Unknown Larson, Corrections Officer Unknown Steal, Chaplain Unknown Peters, Hearing Officer Unknown Mohrman, Hearing Investigator Unknown Burns, Corrections Officer Unknown Nelson, Parole Board Judge Michael C. Eagen, Parole Board Judge Sonia Warchock, Corrections Officer Unknown Kutichie, Unknown Kutchie, Unknown Shainer, R.N., Unknown Grant, R.N., Nurse Unknown Henshaw, Prison Guard

Unknown Tehakko, Prison Guard Unknown Beasly, Unknown McIntire, Corrections Officer Unknown Verntenes, and Corrections Officer Unknown Reddinger.

On October 23, 2013, Plaintiff filed a second amended complaint, in which he alleges that on February 3, 2012, he was transferred from MBP to the Baraga Maximum Correctional Facility (AMF). Plaintiff states that Defendant Tribley and other members of the Security Classification Committee (SCC) were responsible for his transfer. When Plaintiff spoke to Defendant Jhondreau about the transfer, Defendant Jhondreau stated that Plaintiff had beaten up staff in Jackson, then he had come "up north" and filed grievances and complaints. Consequently, Plaintiff was never going to get out of segregation.

Plaintiff states that he was initially sent to MBP by Defendants Gilbert, Sheri, and McKeon to have a "fresh start" because of the retaliation he was experiencing as the result of a lawsuit he had filed against 43 prison officials at AMF. Plaintiff claims that he had been doing well at MBP until he "crossed paths" with Defendant Nelson, who had previously worked at AMF. Plaintiff states that AMF staff subsequently took over MBP and Plaintiff began to receive retaliatory misconduct tickets. Defendant Govern tried to get Plaintiff to amend a lawsuit he had filed, stating that he knew all about Plaintiff and that he had nothing coming. Plaintiff was placed in D Block at MBP and ceased getting misconduct tickets for a period of time, during which staff on the unit told Plaintiff that they did not have any problem with him.

Plaintiff states that during this time period, he had a legal writer working on a petition to the United States Supreme Court. Plaintiff claims that at one point, the legal writer sent Plaintiff a letter requesting specific documents. Plaintiff states that he had never mentioned these documents to the legal writer. Plaintiff believes that prison officials were using the legal writer to discover the

specific facts of Plaintiff's action. Plaintiff states that he had already contacted Michigan State Representative Steve W. Lindberg concerning the retaliatory conduct of staff at MBP, including the staff who had recently arrived from AMF. Lindberg contacted Legislative Ombudsman Field Officer Tane Atkins, who wrote saying that they would be reopening the investigation, but that it was going to take awhile. Subsequently, Plaintiff was approached by a guard that he recognized as having come from AMF, who told Plaintiff that he was being transferred out. When the property officer came to Plaintiff's cell, Plaintiff was told that he was being sent to AMF. Plaintiff protested that he had been transferred out of AMF because of the problems he was having with staff.

Plaintiff states that once he was back at AMF, he was surrounded by numerous people that he had previously sued. Plaintiff was bombarded with major misconduct tickets from staff. Plaintiff states that Defendant Tehakko blocked the camera while Defendants Stecarol and Beasly claimed that Plaintiff had grabbed four fingers of their hands. Plaintiff received a sexual misconduct and an assault and battery, and was placed on upper slot restriction. Plaintiff was subsequently set up again by Defendant Tehakko and was placed on shower restriction. Plaintiff states that when his mother called Defendants Sheri and Gilbert, she was told that Plaintiff had been transferred back to AMF because an inmate needed to be transferred in to MBP in order to receive mental health services. Plaintiff contends that there were other inmates at MBP who could have been transferred other than himself.

Plaintiff claims that on February 23, 2012, he gave Defendant Jhondreau a grievance with attachments, but that Defendant Jhondreau never turned in the grievance. Plaintiff alleges that Defendant Mills got Defendant Beasly to refuse to bring Plaintiff his snack bag and got Defendant Joki to write a false misconduct ticket on Plaintiff. On February 24, 2012, Plaintiff showed

Defendant Mills his ingrown toenail, and she reacted with horror. Defendant Mills then told Plaintiff that she would get back at him for filing a lawsuit against her and walked away without giving Plaintiff his medicine. Plaintiff believes that Defendant Minnard convinced Defendant Hutchinson to discontinue Plaintiff's medications because of the lawsuit. In addition, Defendant Snider told Plaintiff that nurses on second shift did not have to pick up medical kites. Also on February 24, 2012, Plaintiff submitted a store list ordering seventeen stamped envelopes, toothpaste, greeting cards, and other items. However, Plaintiff only received one stamped envelope. Plaintiff showed Defendant Beasly his store receipt and was told that medical had taken Plaintiff's money when he first arrived because Plaintiff had asked for something for his cold. Plaintiff asserts that he never received anything for his cold. Plaintiff made an appointment with Defendant Comfort, but by the time of his appointment two weeks later, he was no longer ill. On February 25, 2012, a nurse named Jeff told Plaintiff that he would be required to pay for his medical call outs, despite the fact that medical personnel were being paid by the MDOC. In addition, Plaintiff complains that Nurse Jeff revealed his medical information in front of other prisoners, which resulted in embarrassment to Plaintiff.

On March 11, 2012, Plaintiff gave a medical kite to Defendant Mills, after she walked by Plaintiff's window without giving him his medication. On March 18, 2012, Resident Unit Officer Martie came and set Plaintiff's pills on top of the food slot as if he was Defendant Mills, then he and Defendant Mills ran off laughing. Plaintiff states that the Resident Unit Officers have shown the nursing staff how to use the wing camera to make it appear as if they are offering Plaintiff his medications, because there is no audio recording.

On July 20, 2012, Defendants Toleftson, Turner, Himmila, MacIntire, and Kutchie were responsible for placing "flys" [sic] and "rocks" in Plaintiff's food items. Plaintiff was not given a replacement tray. Plaintiff claims that while confined at AMF, the heat was not turned on until November 1st, so that the cells were uncomfortably cold. Plaintiff also states that Defendant Himmila slammed the security cart up against his cell, violating policy regarding noise levels in the unit. Plaintiff also claims that while on unit 3 at AMF, he was housed between two psychotic prison informants, and that Defendants Tehakko and Beasly paid them by giving them extra food loaf. Plaintiff claims that Defendants Tehakko and Beasly bumped into him while passing him and then claimed that Plaintiff had assaulted them. In this manner, Defendants Tehakko and Beasly set Plaintiff up on misconducts in order to prevent Plaintiff from being released into the general population. Therefore, Plaintiff stopped going to the shower and the yard in order to avoid any contact with them.

Plaintiff claims that he suffers from numerous psychiatric disorders, such as obsessive compulsive disorder, bipolar disorder, suicidal tendencies, dysthmia, borderline personality traits with narcissistic features, antisocial personality disorder, and schizo affective disorder. Plaintiff states that Defendant Woelek refused to treat him at AMF. In addition, Plaintiff states that the psychiatrist at MBP told him that he was not going to treat Plaintiff at the present time.

Plaintiff claims that Defendant Wellman, a registered dietician, discontinued his medically prescribed snack bags, stating that Plaintiff had been placed on a "minnus" [sic] diet. Plaintiff claims that Defendant Attorneys Peters and Peleta breached a contract with Plaintiff by failing to ensure that his pleadings were filed with the "Jackson Court" before his deadline was up. Plaintiff claims that he was improperly found guilty of assault by Defendant Young, and that he

never received his findings from Young's supervisor so that he could file an appeal of the misconduct.

Plaintiff alleges that Defendant Hutchinson improperly discontinued medication to treat Plaintiff's terminal condition, at the behest of Defendant Minnard. Plaintiff claims that the discontinuation of his medication caused him to suffer excruciating headaches. Defendant Minnard also allowed a Corrections Officer to reveal Plaintiff's medical condition in front of other prisoners. Plaintiff claims that Defendants Turner, Negalie, MacIntire, Goodreau, Himmila, Lapoint, Grubb, Hommer, and Reddinger told him that they did not care about his grievances or lawsuits, telling Plaintiff that his last lawsuit did not get him very far. Plaintiff contends that Defendant Lachance falsely claimed that Plaintiff had refused to go to his annual dental cleaning appointment, depriving Plaintiff of dental care. Plaintiff alleges that while in segregation at AMF, his weight dropped from 210 pounds to 158 pounds and that he became delirious and talked to himself.[1]

On January 19, 2013, Plaintiff was transferred back to MBP and was placed on a cell block reserved for mentally ill prisoners. Plaintiff had been ticket free for approximately 8 months and was on stage 5 of the incentive program. Plaintiff states that he has a RPA [Regional Prison Administrator] hold and that inmates must be ticket free for one year in order to be released from such a hold. Plaintiff states that Defendant Hill, who was a defendant in Plaintiff's previous lawsuit, told him that he needed to straighten his cell, even though it was already neat. Plaintiff states that

_____

[1]According to the biographical information for Plaintiff on the MDOC's Offender Tracking System, he is 5 feet and 7 inches tall. Based on this information, it appears that Plaintiff's asserted weight loss was likely beneficial to his health. Moreover, as of September 23, 2010, Plaintiff weighed 175 pounds. Therefore, considering the fact that Plaintiff was not transferred to AMF from MBP until February 3, 2012, his claim that he went from 210 pounds to 158 pounds while in segregation at AMF appears to be suspect. At the very least, Plaintiff would have had to gain 35 pounds in less than a year and half prior to his transfer to AMF. *See* http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber =228931.

he showed both Sergeant Hennings and the Assistant Resident Unit Supervisor his cell, and they stated that it was neat and in order. Defendant Hill subsequently told Plaintiff that he was "f$#ked," because he wanted to file lawsuits and that he should not "cry about not moving" to a higher stage in the incentive program. Defendant Hill also told Plaintiff that he was responsible for Plaintiff's transfer back to MBP. Plaintiff complained about Defendant Hill's conduct to Defendant Talieo, who stated that Plaintiff was not going to be transferred to another unit and would have to work things out with Defendant Hill.

On January 28, 2013, psychologist M. Salmi wrote a ticket on Plaintiff for being nude with an erect penis. On January 30, 2013, Plaintiff complained to Defendant Talieo about the sexual misconduct ticket. Defendant Talieo stated that he did not care and that Plaintiff had been sent back to AMF as punishment for filing lawsuits. On January 31, 2013, Plaintiff went before the Security Classification Committee (SCC) and confronted the Captain and Inspector with his claims of a conspiracy to give him misconduct tickets in order to keep him in segregation, to no avail.

Plaintiff asserts that Defendant Govern improperly denied him legal copies on two occasions in 2011, and that his access to the courts was "delayed" by this conduct. On another occasion, Defendant Govern told Plaintiff that mail to the Legislative Correction Ombudsman's office does not qualify as legal mail. Plaintiff asserts that on another occasion in 2011, Defendant Hill refused to go through the chain of command, and told Plaintiff that his complaints should be reported to a supervisor. Plaintiff also claims that on February 4, 2013, staff told him that he did not have anything coming from the store, so that Defendant Nardie, who had taken Plaintiff's store order, must have failed to submit the order on Plaintiff's behalf. Plaintiff states that his mother had

put money on his phone card, but that when he attempted to use the card he was told that there was no money on it.

Plaintiff claims that the false misconduct tickets he has received have caused him to be denied parole. Plaintiff states that he is constantly worried about dying, and is not receiving appropriate treatment for his depression. Plaintiff alleges that he has been seen by numerous psychiatric professionals, but that they are unwilling to let him talk openly about his concerns. On March 10, 2013, Plaintiff spoke to Defendant Shainer regarding a kite he submitted on March 7, 2013, regarding the fact that Plaintiff had become sick after eating oatmeal with some "film" on top of it. Defendant Shainer responded by swearing at Plaintiff and telling him that he was going to suffer because he had sued Defendant Shainer's friends.

Plaintiff claims that Sergeant Hennings reviewed him on misconduct tickets, and took the side of staff despite knowing that the misconduct tickets were false. On March 12, 2013, Defendant Hill told Plaintiff that if he did not expose himself and masturbate, he would not receive his breakfast tray. On March 15, 2013, Plaintiff received a sexual misconduct ticket from Psychologist Salmi, asserting that Plaintiff had exposed himself, when in fact Plaintiff was in the bathroom area and was not aware that he was being observed. On September 23, 2013, Defendant Nardie told Plaintiff that he would be transferred to I-Max, but Plaintiff's roommate was transferred instead. Plaintiff claims that Defendants did not interview him on grievances and that Defendant Napel failed to properly supervise his subordinates. Plaintiff states that he has been harassed and discriminated against in order to prevent him from advancing through the incentive program throughout his incarceration at AMF and MBP.

On August 30, 2013, Plaintiff placed a store order when an unknown officer told Plaintiff that neither he nor officer Jennings would give Plaintiff anything. Plaintiff complains that the fan is left on in the segregation unit during the night, causing Plaintiff and other inmates to suffer from the cold temperatures. Plaintiff complained to Defendant Niemisto about being harassed by staff and being kept in administrative segregation longer than necessary, to no avail. Plaintiff claims that he requested a hearing packet from the Hearing Investigator, so that he could challenge his major misconduct, but he never received the packet.

Plaintiff claims that Defendant Bolton assaulted him by using Plaintiff's belly chains to pull his feet out from under him, causing Plaintiff to fall and hit his head on the floor. Defendant Bolton then yelled at Plaintiff to stay down and acted as if Plaintiff was resisting and had caused the incident. Plaintiff subsequently received a misconduct ticket regarding this incident. Plaintiff states that he suffers from migraine headaches as a result of the trauma to his head.

Plaintiff claims that on September 26, 2013, while he was at health services, Defendants Nelson and Hill went into his cell and removed an original complaint that was filed with the court. Plaintiff stopped Defendant Napel when he was making rounds and told him about all the problems he had been having with former AMF staff since he had been transferred back to MBP, including the false misconduct tickets he had received. Plaintiff claims that staff are using the misconduct tickets to keep Plaintiff in administrative segregation, and that the real reason they want to keep Plaintiff out of the general population is his HIV and HCV status. Plaintiff asserts that this constitutes discrimination and is illegal. Plaintiff states that this also allows staff to prevent Plaintiff from obtaining a job as a porter.

-11-

On October 7, 2013, Plaintiff was told that he was at Stage 4 of the Incentive Program. At this stage, Plaintiff should have been allowed to have a television or radio, to order candy and chips, and to use the telephone to call family and friends. However, when Plaintiff attempted to use the telephone he was told that he did not have a valid PIN number. Once that was resolved, Plaintiff was told that he did not have money in his account to pay for the call, even though Plaintiff's family had just put money in the account. In addition, staff claimed that Plaintiff had destroyed his television in 2011, so that Plaintiff was not allowed to obtain a new television.

Plaintiff alleges that on August 20, 2013, he gave Defendant Nardie a regular disbursement to send mail to his mother's home via certified mail. Plaintiff received a receipt on September 19, 2013, but never received the green card indicating that the mail had been received by his mother. Plaintiff states that the money was deducted from his account to pay for this service, but he still has not received the green card. On October 13, 2013, Plaintiff asked Defendant Vietalla about the green card, to no avail.

On October 11, 2013, Plaintiff asked Defendant Kutchie why he was ignoring Plaintiff and why he had influenced medical staff to also ignore Plaintiff. Plaintiff states that Defendant Kutchie harassed Plaintiff by trying to get into verbal disputes with Plaintiff over word definitions, revealing Plaintiff's medical information to others on second shift, and belittling Plaintiff over his "sexual organs" and behavior. Plaintiff states that Defendant Kutchie is motivated by the fact that Plaintiff is suing Defendant Kutchie's brother at AMF. Plaintiff complained to Sergeant Barnette, but he refused to take any corrective action.

Plaintiff claims that there is too much fraternization between medical staff and security staff and that security staff influences medical personnel to give them information about

Plaintiff or to cover up the misconduct of security staff. Plaintiff claims that Defendants have violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks damages and equitable relief.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some

-14-

other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

A review of Plaintiff's second amended complaint shows that Defendants Lindberg, Atkins, Curley, Wealton, Coello, Rule, Petaja, Dewar, Bush, Pesola, Place, Perrish, Miller, Haischer, Gill, Yankavitch, Comfort, Zachy, Mackey, Reckor, Frackin, Perry ( the short one), Mayo, Fracki, Sackett, Berry, Ross, Lake, McPhearson, Betts, Morgan, Lau, Antalia, Perry (the tall one), Latundresse, Amlie, CMS, Harris, Bursard, Masker, Zimbleman, Taja, Ceollo, Napel, Heyns, Beauchamp, Cummings, Wallace, Alexander, Caron, Niemisto, Yunker, James, Havenor, Sibily, Larson, Steal, Chaplain Peters, Morhman, Burns, Eagen, Warchock, Kutichie, Grant, Henshaw, McIntire, Verntenes, and Reddinger were either not mentioned in the body of the complaint or were only named because of their failure to act. Plaintiff has not alleged facts establishing that these

Defendants were personally involved in the activity which forms the basis of his claim. The only roles that these Defendants had in this action involve the denial of administrative grievances or the failure to act. Individuals cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Lindberg, Atkins, Curley, Wealton, Coello, Rule, Petaja, Dewar, Bush, Pesola, Place, Perrish, Miller, Haischer, Gill, Yankavitch, Comfort, Zachy, Mackey, Reckor, Frackin, Perry ( the short one), Mayo, Fracki, Sackett, Berry, Ross, Lake, McPhearson, Betts, Morgan, Lau, Antalia, Perry (the tall one), Latundresse, Amlie, CMS, Harris, Bursard, Masker, Zimbleman, Taja, Ceollo, Napel, Heyns, Beauchamp, Cummings, Wallace, Alexander, Caron, Niemisto, Yunker, James, Havenor, Sibily, Larson, Steal, Chaplain Peters, Morhman, Burns, Eagen, Warchock, Kutichie, Grant, Henshaw, McIntire, Verntenes, and Reddinger are properly dismissed for lack of personal involvement.

In addition, Plaintiff has named the Michigan Parole Board as a defendant. The Michigan Parole Board is part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Michigan

Department of Corrections, is immune from injunctive and monetary relief. *See Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004) (same); *Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (same).

Plaintiff has also named United States District Judge R. Allan Edgar and Hearing Officer Mathew D. Young as defendants. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

With regard to Defendant United States District Judge R. Allan Edgar, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own

convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12. Plaintiff fails to do more than name Judge Edgar as a defendant in this case and does not specifically allege the nature of his claim against Judge Edgar. Therefore, Plaintiff has clearly fail to implicate either of the exceptions to judicial immunity.

Moreover, injunctive relief is also not available under § 1983, because that statute provides that injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, his claim for injunctive relief is barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Plaintiff claims that Defendant Attorneys Peters and Peleta breached a contract with Plaintiff. The court notes that Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction

over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

Plaintiff's claim against Defendant Nelson consists of the fact that things allegedly got worse for Plaintiff at MBP after he "ran into" Defendant Nelson.  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is

entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).  Because Plaintiff's claim against Defendant Nelson is entirely conclusory, he is properly dismissed.

Plaintiff claims that Defendant Nardie took a store order from Plaintiff, which Plaintiff did not receive.  Plaintiff was eventually told that he had insufficient funds to pay for the order.  Plaintiff also states that Defendant Nardie took a mail disbursement from Plaintiff for certified mail and gave him a receipt, but that Plaintiff never got confirmation that the mail was actually delivered to the intended recipient.  Finally, Plaintiff contends that Defendant Nardie told him that he would be transferred to I-Max, although Plaintiff was not actually transferred.  Moreover, Plaintiff claims that Defendant Vietalla did not respond to Plaintiff's request for a confirmation that his certified mail was delivered.  The court concludes that Plaintiff's allegations against Defendant Nardie and Defendant Vietalla do not permit the court to infer more than the mere possibility of misconduct.  Therefore, Defendants Nardie and Vietalla are properly dismissed as conclusory.

Plaintiff claims that Defendants Hill and Nelson violated his due process rights when they took an original complaint from the floor of his cell.  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and

prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's complaint will be dismissed.

Similarly, Plaintiff's access to courts claim against Defendants Hill and Nelson are properly dismissed.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343

(1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim.  *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985).  An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced.  *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994).  Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property.  *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).  In this case, Plaintiff failed to allege actual injury to pending or contemplated litigation.  *Dellis v. Corrections Corp. of America*, 257 F.3d 508, 511 (6th Cir. 2001)(citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

With regard to Plaintiff's access to the courts claim against Defendant Govern, the court notes that although Plaintiff claims that his access was delayed by Defendant Govern's

conduct, he does not allege that he suffered an actual injury to pending or contemplated litigation. Therefore, Plaintiff's access to courts claim against Defendant Govern lacks merit.

Plaintiff claims that Defendants Lapoint and Snider violated his Eighth Amendment rights when they verbally harassed him. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff claims that Defendant Woelek refused to treat Plaintiff's mental illness while he was at AMF. The Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). However, Plaintiff fails to specifically allege his need for mental health treatment, whether he was treated by other medical personnel, or whether he suffered any harm as a result of Defendant Woelek's conduct. Therefore, Plaintiff's claim against Defendant Woelek is properly dismissed.

Plaintiff claims that Defendant LaChance violated his Eighth Amendment rights by falsely reporting that Plaintiff had refused his annual dental cleaning appointment, causing Plaintiff to miss his annual cleaning.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In *Flanory v. Bonn*, 604 F.3d 249, 253-54 (6th Cir. 2010), the Sixth Circuit held that allegations that an inmate had been deprived of toothpaste for 337 days and experienced dental health problems were sufficient to state an Eighth Amendment claim. In this case, Plaintiff fails to allege that he was deprived of basic hygiene needs, such as in *Flanory*, nor does Plaintiff allege that

he suffered dental health problems as a result of the denial of his yearly dental appointment. Therefore, Plaintiff's Eighth Amendment claim against Defendant LaChance is properly dismissed.

Plaintiff claims that Defendant Talieo refused to transfer Plaintiff to a different unit in order to get away from Defendant Hill, telling Plaintiff he had to work it out. Plaintiff also claims that Defendant Talieo refused to help him overturn his misconduct ticket that he received from Psychologist Salmi. Finally, Plaintiff states that Defendant Talieo told him that he had been sent back to AMF as punishment for filing lawsuits. Plaintiff states that Defendant Talieo's conduct was motivated by a desire to retaliate against him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to allege that Defendant Talieo took an adverse action against him. It appears that Defendant Talieo merely failed to act on Plaintiff's behalf when Plaintiff asked him to intervene. Moreover, the fact that Defendant Talieo told Plaintiff that his transfer had been a punishment does not indicate that Defendant Talieo agreed with this conduct, or that he was

motivated by the same desire to retaliate. Therefore, Plaintiff's retaliation claim against Defendant Talieo is properly dismissed.

Plaintiff also claims that Defendants Sheri, McKeon, Gilbert, and Tribley transferred him to AMF in order to retaliate against him. Plaintiff states that when his mother called Defendants Sheri and Gilbert, she was told that Plaintiff had been transferred back to AMF because an inmate needed to be transferred in to MBP in order to receive mental health services. Plaintiff contends that there were other inmates at MBP who could have been transferred other than himself. As noted above, Plaintiff fails to allege any specific facts showing that Defendants Sheri, McKeon, Gilbert and Tribley were motivated by a desire to retaliate against him. Therefore, Plaintiff's retaliation claims against these Defendants are properly dismissed.

Moreover, there is no right under federal law allowing a prisoner to prevent a transfer to another facility or giving him any choice concerning the facility where he will be incarcerated. *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238 (1983). Therefore, the decision to transfer Plaintiff does not implicate his due process rights.

Finally, the court concludes that Plaintiff has stated non-frivolous retaliation claims against Defendants Hill, Stecarol, Mills, Joki, Jhondreau, Hutchinson, Minnard, Turner, Himmila, Negalie, Goodreau, Grubb, Hommer, Tehakko, Beasly, Shainer, Kutchie, and Toleftson. In addition, Plaintiff's Eighth Amendment claims against Defendants Hutchinson, Minnard, Turner, Himmila, Toleftson, Wellman, Bolton, Hill, and Kutchie are also non-frivolous and may not be dismissed on initial screening.

Plaintiff's motion to amend his complaint (docket #45) to include a retaliation claim against Defendant Kutchie for tampering with Plaintiff's food is denied as unnecessary as Plaintiff is already asserting such conduct in his second amended complaint, as noted above.

Plaintiff's motions for order or penalty (docket #43), to enforce his rights (docket #46), and for declaratory judgment (docket #51), are denied as premature. Defendants have not yet been served or had the opportunity to respond to Plaintiff's complaint.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Sheri, McKeon, Gilbert, Govern, Lindberg, Atkins, Curley, Wealton, Coello, Rule, Petaja, Dewar, Bush, Pesola, Lapoint, Tribley, Place, Perrish, Miller, Haischer, Gill, Yankavitch, Snider, LaChance, Comfort, Zachy, Mackey, Reckor, Frackin, Perry (the short one), Mayo, Dr. Fracki, Sackett, Berry, Ross, Lake, McPhearson, Betts, United States District Judge R. Allan Edgar, Morgan, Lau, Antalia, Perry (the tall one), Latundresse, Amlie, CMS [Corrections Medical Services], Woelek, Harris, Bursard, Masker, Attorney Peters, Attorney Peleta, Young, Zimbleman, Taja, Ceollo, Napel, Michigan Parole Board Commission, Heyns, Beauchamp, Cummings, Wallace, Alexander, Caron, Nardie, Talieo, Niemeisto, Yunker, James, Vietalla, Havenor, Sibily, Larson, Steal, Chaplain Peters, Mohrman, Burns, Nelson, Eagen, Warchock, Kutichie, Grant, Henshaw, McIntire, Verntenes, and Reddinger will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will serve the complaint with regard to Plaintiff's retaliation claims against Defendants Hill, Stecarol, Mills, Joki, Jhondreau, Hutchinson, Minnard, Turner, Himmila, Negalie, Goodreau, Grubb, Hommer, Tehakko, Beasly, Shainer, Kutchie, and Toleftson, as well as his Eighth

Amendment claims against Defendants Hutchinson, Minnard, Turner, Himmila, Toleftson, Wellman, Bolton, Hill, and Kutchie.

An Order consistent with this Opinion will be entered.


Dated: <u>November 27, 2013</u>                    <u>/s/ Robert Holmes Bell</u>
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE